NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

WILLIAM A. HAYES, PETITIONER, v. FIRST BAPTIST
CHURCH OF BLOOMFIELD AND COMMERCIAL CAS-
UALTY COMPANY, RESPONDENTS.

Decided February 20, 1940.

For the petitioner, *David Roskein.*

For the respondents, *Henry M. Grosman.*

\*       \*       \*       \*       \*       \*       \*

From the testimony adduced, I find that on March 19th,
1938, and for approximately sixteen months prior thereto,
the petitioner was employed as a sexton by the respondent
First Bapist Church of Bloomfield, New Jersey, at a salary
of $25 a week. His duties, *inter alia,* consisted in cleaning
class rooms, arranging chairs, tending the furnace, emptying
ashes and taking care of different things in and about the
church premises, including small carpentry and plumbing
jobs. The petitioner was apparently able to perform these
duties, prior to the aforesaid date, without any discomfort
or disability. He appeared to be, to all outward appearances,
a normal and active individual with no apparent ailment,
nor had he lost any time from his work prior to March 19th,

1938, or experienced any difficulty with his heart. It further appears that the petitioner, without any knowledge of the fact, had an arterio-sclerotic heart. This condition produced no disability, no discomfort, nor did it in anywise interfere with his ability to carry on his accustomed work, up to the time of the occurrence of March 19th, 1938.

The testimony discloses that on the aforesaid date, at about four P. M., the petitioner, together with another man, was carrying up a stairway, a heavy board about twelve feet long and three feet wide, weighing about a hundred pounds, which board was to be used for the construction or repair of a platform in the auditorium of the church in connection with a minstrel show which was to be given. The petitioner was carrying the top end of the board up the stairway and as he reached a point about one or two steps below the landing thereof, he felt something *happen* to his heart which made him gasp, suffered a troubled sense of suffocation, and "went weak and all the use seemed to go out of" him. He had to lay down the board which he was holding and had to support himself by resting against the wall for about three or four minutes, and then continued up the stairway as best he could and was then compelled to go to another room where he rested for another fifteen or thirty minutes. The suffocating sensation, pain and feeling of weakness did not leave him and he endeavored to carry on his duties with as little effort as possible. His condition was such, that when he attempted, that evening, to shovel coal for the purpose of preparing the furnace at the church for the next day's services, he was again seized with the suffocating sensation and weakness and was unable to do this work and was relieved at once by his son who finished the petitioner's task and took him home.

For the next several days the petitioner endeavored to continue with the performance of light duties; however, throughout that time he felt very weak and short of breath and testified that the suffocating sensation seized him whenever he tried to do anything strenuous. On the Thursday evening following March 19th, 1938, as he returned to the church in pursuance of his duties, he collapsed and was immediately taken to the office of Dr. H. E. Montero, where first aid was

administered. He then was removed to his home where he was confined for two weeks in bed and for an additional week about his house. During his confinement at home he complained of shortness of breath, pain, the feeling of suffocation, and weakness. Since the occurrence of this accident, the petitioner has been under continued medical treatment. He still suffers from shortness of breath, the sensation of suffocation, general weakness, pain and inability to walk up steps without discomfort. With the exception of a bit of canvassing work which he endeavored to do and which only required his riding about in an automobile driven by someone else, he engaged in no work until June, 1939, when he obtained employment as a "water boy" with the W. P. A. This work required his carrying a pail of water, with a dipper, to the various men working on the project when they required a drink, and it appears that even in the performance of this light activity he has found it necessary to rest during the day.

The respondent produced and exhibited motion pictures alleged to have been taken of the petitioner while engaged in his duties as a "water boy" with the W. P. A. After viewing the motion pictures offered which purport to depict certain activity on the part of the petitioner while working on the W. P. A. project as a "water boy," I find that they have no real significance nor am I constrained to place any real probative value on them. There appeared no time interval between the various movements of the petitioner and, as they were taken and projected in court, it appeared obvious that they were intended to give the impression that the petitioner's activities were energetic and fairly strenuous. From the undisputed testimony adduced, it is evident that the duties of the petitioner as a "water boy" only required his going to the pump for water three or four times a day. The motion pictures offered, sought to convey the impression that the petitioner was continuously walking to and from the pump. In this and other respects, they are patently misleading and afford me no aid in determining the facts or the reasonable inferences to be drawn from that portion of the testimony.

The moving pictures, if anything, tend to corroborate the petitioner's testimony of his present physical incapacity with

respect to engaging in any gainful occupation or vocation. Total disability within the meaning of the act does not require that the petitioner be bedridden or completely unable to get about. The term "disability" is not restricted to such disabilities as impair present earning power at the particular occupation, but embraces any loss of physical function which detracts from the former efficiency of the body or its members in the ordinary pursuits of life. *Everhart* v. *New Jersey Cleaning and Dyeing Co.,* 119 *N. J. L.* 104; *Burbage* v. *Lee,* 87 *Id.* 36; *Pressey* v. *DeZeng Standard Co.,* 86 *Id.* 469; *affirmed,* 88 *Id.* 382; *Burd* v. *Richardson & Boynton,* 40 *N. J. L. J.* 84. Under the law of this state, it is not incumbent upon the petitioner to prove that he is absolutely helpless in order to obtain an award for total disability. *Woodrow* v. *Travelers Insurance Co.,* 121 *N. J. L.* 170. Furthermore, the physicians who appeared for the petitioner have testified that he has been advised that he completely refrain from work. The impelling reason for his disregard of such advice can be gleaned from his testimony to the effect, "I had to do it, or I'll starve." I do not believe that the petitioner should be penalized for his honest, albeit unwise, efforts to thus engage in some activity in spite of nature's demand that he desist. I can conceive of no less strenuous work than that of a "water boy" on a W. P. A. project. The fact that he has been so engaged does not in anywise warrant my disregarding the greater weight of the credible medical testimony that he is totally and permanently disabled.

The testimony is clear and convincing that the petitioner, prior to the accidental occurrence of March 19th, 1938, was free of symptoms of coronary disease and that after his unusual physical exertion on that day, symptoms thereof became manifest. I feel and so find that the unusual physical exertion in carrying the said plank up the stairway induced the acute heart strain with the resulting stretching of the muscle fibres beyond their limits of normal elasticity with a permanent change in their structure. The testimony is clear that the petitioner was gainfully employed at a task and actually working when the cardiac symptoms manifested themselves in that he was in the act of carrying a heavy timber up a flight

of steps which of itself constituted a physical exertion. The coronary symptoms immediately followed the event to which the cardiac injury is ascribed and there was a continuity of symptoms from that event to the present date.

Compensation for total disability is properly due to an employe, who suffers an accidental strain of the heart, even though the heart was previously weakened by disease, and prior to the occurrence had no disabling effects on the employe, where the accident arises out of and in the course of the employment. *Bernstein Furniture Co.* v. *Kelly,* 115 *N. J. L.* 500; *Hentz* v. *Janssen Dairy Corp.,* 122 *Id.* 494. Considering the petitioner's apparent good health and his unimpaired capacity for work prior to the unusual exertion of March 19th, 1938, in the light of the subsequent developments, it is inconceivable that the acute strain was not the causative agent of the ensuing disability. *Kolesnik* v. *Irvington Varnish and Insulator Co.,* 120 *Id.* 8.

\*     \*     \*     \*     \*     \*     \*

(Recital of medical evidence given by seven doctors has been deleted by the editor.)

As a result of the said accident, I find that the petitioner has sustained a permanent disability which I fix at one hundred per cent. of permanent total, for which he is entitled to receive compensation for a period of four hundred weeks.

\*     \*     \*     \*     \*     \*     \*

It is, therefore, \* \* \* ordered, that judgment be entered in favor of the petitioner and against the respondent.

\*     \*     \*     \*     \*     \*     \*

And it is further ordered, that upon the expiration of the four hundred week period hereinabove set forth, this petitioner shall be entitled to further benefits pursuant to the provisions of *R. S.* 34:15-12B.

JOHN C. WEGNER,
*Deputy Commissioner.*